I agree with the majority that the claims for breach of contract and wrongful termination of employment were properly dismissed; however, I believe that the claims for the tort of outrage were also properly dismissed.
The issue is whether the complaint was sufficient to state a cause of action for the tort of outrage. I do not think it was.
Rice alleges in her complaint
 "that the Defendants did repeatedly attempt to coerce Plaintiff to taking disability leave, admonished Plaintiff in the presence of co-employees that Plaintiff could no longer perform her duties, harassed Plaintiff both alone and in the presence of co-employees to make her appear and feel incompetent, ridiculed Plaintiff both alone and in the presence of co-employees, harassed, humiliated, ridiculed or cast aspersions upon the Plaintiff in the presence of sales clients in order to adversely affect her work performance, withheld vital business information from the Plaintiff in order to adversely affect her work performance, eventually terminated Plaintiff's employment, and following Plaintiff's termination failed or refused to provide job and performance-related information necessary for Plaintiff to acquire other employment, failed or refused to provide Plaintiff with her W-2 forms in a timely fashion so as to delay Plaintiff's filing her 1981 income tax returns, failed or refused to pay Plaintiff the full amount of the sales accounts due her at termination, unjustifiably withheld payment from Plaintiff's net earnings."
The majority recites the pertinent facts in two cases similar to the present case, American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980), and Beidler v. Grace, *Page 1104 461 F. Supp. 1013 (E.D.Pa. 1978). The plaintiff was not permitted to recover for the tort of outrage in either of those two cases. In Cushing v. General Time Corp., 549 F. Supp. 768
(N.D.Ala. 1982), the employee was threatened with termination, accused of malicious gossip, talked to in an ugly way, and suspended; nevertheless, the court granted the employer's motion for summary judgment on the tort of outrage count.[1] The holdings in these cases must govern the case at hand.
In Inmon, we recognized that the tort of outrage consists of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 394 So.2d at 365 (citing Restatement (Second) of Torts § 46, Comment (d) (1965)).
Section 46, Comment (d), Restatement, supra, limits the extent of liability:
 "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind."
Section 46, Comment (h), Restatement, supra, provides for judicial control in determining which emotional distresses are actionable:
 "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."
Only in two cases has this Court found sufficient allegations to state a cause of action for the tort of outrage. In Cates v.Taylor, 428 So.2d 637 (Ala. 1983), the defendants were alleged to have refused to allow the plaintiffs to bury their father in a cemetery lot which the defendants had given them for that purpose. As a result of the defendants' refusal, graveside services had to be conducted at an undug grave, the plaintiffs had to secure another lot for their father's burial, and the plaintiffs had to have their mother's remains and tombstone moved and placed next to their father's lot. We held that the allegation of defendants' refusal to allow the burial, which disrupted the funeral and destroyed the solemnity of the occasion, indicated an act fitting the requirements of an act "beyond all possible bounds of decency" and "atrocious and utterly intolerable." 428 So.2d at 640.
In our most recent tort of outrage case, National SecurityFire Casualty Co. v. Bowen, 447 So.2d 133 (Ala. 1983), we held that the conduct of the private investigators hired by National Security to investigate a fire loss was sufficient to meet the Inmon standard. The investigators threatened the lives of Bowen and his children. Furthermore, the threat to Bowen was an immediate threat because the investigators forced Bowen at gun point to drive into the woods and lie on the ground. While Bowen was lying on the ground, the investigators snapped the hammer on the gun.
The instant case is different from Cates and Bowen in that it involves the employer-employee relationship. While an employer does not possess a roving license to threaten his employees in an extreme or outrageous manner, Inmon, supra, he does *Page 1105 
have a right to comment on matters regarding the employee's job performance, even if he chooses to comment in a tactless or unkind manner.[2]
The tort of outrage was not intended to force employers, or anyone else, to be considerate of others. We recognized the tort of outrage to allow recovery for conduct "intolerable in a civilized society." I do not believe that the plaintiff here has alleged sufficient facts to meet the Inmon test of the tort of outrage.
Further, the fact that the conduct allegedly caused Rice to miscarry should not be considered in determining whether there are sufficient facts to meet the requirements of the tort of outrage. The focus in the tort of outrage is on the gravity of the conduct rather than the results of the conduct. Edwards v.McAllister, 437 So.2d 74 (Ala. 1983); Empiregas, Inc., ofGadsden v. Geary, 431 So.2d 1258 (Ala. 1983).
I would like to make one final point. Alabama is still an employment-at-will state. Meeks v. Opp Cotton Mills, Inc.,459 So.2d 814 (Ala. 1984). This means an employee cannot recover damages merely because he was terminated — regardless of the reason for the termination. The majority opinion in the present case, however, would seem to allow recovery for termination by relaxing the requirements of the tort of outrage. This opinion implicitly modifies the employment-at-will law by allowing an employee who is terminated after being reprimanded or warned by the employer to sue and recover on a general allegation of outrage. I do not believe this is what the majority intended to do.
I would affirm the judgment dismissing all of the plaintiff's causes of action.
ALMON and SHORES, JJ., concur.
[1] In a companion case, Collins v. General Time Corp.,549 F. Supp. 770 (N.D.Ala. 1982), it was alleged that the employer's manager went to the plaintiff's home when she had broken ribs and accused her of feigning job-related injuries. The court denied the employer's motion for summary judgment on the outrage count, placing emphasis on the fact that the employer's conduct took place "off premises," some distance from the place of employment.
[2] He may not have the right to make these comments away from the workplace, Collins v. General Time Corp., 549 F. Supp. 770
(N.D.Ala. 1982), or after employment has ceased, M.B.M. Co. v.Counce, 268 Ark. 269, 596 S.W.2d 681 (1980). Although the employer in the instant case was alleged to have withheld W-2 forms and performance-related information from Rice after Rice's termination, this conduct, while causing inconvenience, would clearly not be conduct I would characterize as outrageous.